Jonathan Solish, California Bar No. 67609
jonathan.solish@bryancave.com
David A. Harford, California Bar No. 270696
david.harford@bryancave.com
BRYAN CAVE, LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100
Facsimile: (310) 576-2200

Michael K. Vaska, Washington State Bar
No. 15438, *Pro Hac Vice*
Mike.vaska@foster.com
FOSTER GARVEY PC
1111 Third Avenue, Suite 3000
Seattle, Washington 98101
Telephone:(206) 447-4400
Facsimile: (206) 447-9700
Attorneys for Respondent City Beverages LLC
dba Olympic Eagle Distributing

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, fka HANSEN BEVERAGE COMPANY,<br><br>                              Petitioner,<br><br>        v.<br><br>CITY BEVERAGES LLC d/b/a OLYMPIC EAGLE DISTRIBUTING,<br><br>                              Respondent. | No. 5:17-cv-00295-RGK-KK<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION IN A NEUTRAL FORUM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: February 1, 2021<br>Time: 9:00 a.m.<br>Courtroom: 850 |

**TO PETITIONER MONSTER ENERGY COMPANY FKA HANSEN BEVERAGE COMPANY, ITS ATTORNEYS OF RECORD, AND THE CLERK OF THE ABOVE-CAPTIONED COURT:**

**PLEASE TAKE NOTICE** that, on February 1, 2021 at 9:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 850 of the above-referenced court, located at 255 East Temple Street, Los Angeles, CA 90012, Respondent City Beverages LLC dba Olympic Eagle Distributing ("Olympic Eagle"), will and hereby does move the Court for an order compelling arbitration of the parties' dispute to a neutral arbitration provider, such as the American Arbitration Association ("AAA").

Olympic Eagle makes this Motion pursuant to 9 U.S.C. § 5, which provides in relevant part that, "if for any … reason there shall be a lapse in the naming of an arbitrator … or in filling a vacancy …upon the application of either party to the controversy the court shall designate and appoint an arbitrator." The Court's exercise of this authority is appropriate here because JAMS violated the requirement of neutrality when it filed two amicus briefs in this matter supporting Monster Energy's position against Olympic Eagle; and the parties are at an impasse because Monster Energy insists arbitration must proceed in front of JAMS.

Olympic Eagle also makes this Motion pursuant to 9 U.S.C. §§ 2 and 4 because Monster has refused to agree to proceed with neutral arbitration under the arbitration agreement. Monster's continued insistence upon enforcing the requirement to conduct an arbitration administered by JAMS is unenforceable because JAMS upset the parties' reasonable expectation of neutrality when it filed two amicus briefs supporting Monster's position in this case.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, this Court's records, the Declarations of Mike Vaska and Shawn Bai, and all other matters that the Court may consider.

1   This Motion is made following the conference of counsel pursuant to L.R. 7-3,

2   which took place on by telephone and email during the period from September 18,

3   2020 to November 22, 2020, as set forth in the Declaration of Michael Vaska at ¶¶

4   8-12.

5

6   Dated: December 21, 2020                     BRYAN CAVE, LLP

7

8   By: */s/ David Harford*___
                                    Jonathan Solish
                                    David Harford

9

10                                  FOSTER GARVEY PC

11  By: */s/ Mike Vaska*
                                    Michael K. Vaska

12

13                                  ***Attorneys for Respondent City
                                    Beverages LLC dba Olympic Eagle
                                    Distributing***

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

# TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION** ............................................................................................. 1

**FACTUAL BACKGROUND** ............................................................................ 3

**ARGUMENT** .................................................................................................... 5

A.   JAMS Created Reasonable Doubt About Its Neutrality By Supporting
     Monster Energy In This Dispute. ................................................................ 7

     1.   Neutral arbitration requires not only an unbiased forum, but also the
          appearance of impartiality ................................................................. 7

     2.   By Supporting Monster Energy In This Dispute, JAMS Violated Its
          Obligation To Be And To Appear Neutral. ....................................... 9

     3.   An Arbitration Provider That Is Partial To One Party Cannot
          Unilaterally Select The Neutral Arbitrator. .................................... 11

B.   JAMS' Support For Monster Energy Violates Olympic Eagle's Reasonable
     Expectation Of, And The Non-Waivable Public Policy Requiring, A Neutral
     Forum. ...................................................................................................... 13

     1.   JAMS Violated Olympic Eagle's Reasonable Expectations That It
          Would Remain Neutral. .................................................................. 13

     2.   Allowing JAMS Or Its Neutrals To Preside Over This Dispute
          Violates The Unwaivable Right to An Impartial And Neutral
          Arbitrator. ...................................................................................... 16

C.   The Court Should Compel Arbitration in a Neutral Forum. ..................... 17

     1.   JAMS Is Unavailable Because Its Support For Monster Energy Has
          Raised Reasonable Doubts About Its Impartiality ........................... 17

     2.   The court should strike the clause designating JAMS and appoint a
          neutral arbitrator ............................................................................. 19

**CONCLUSION** .............................................................................................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal. 4th 83 (2000)........................................................................8

*Aviall, Inc. v. Ryder Sys., Inc.*,
    110 F.3d 892 (2d Cir. 1977) ...........................................................7, 19

*Azteca Constr., Inc. v. ADR Consulting, Inc.*,
    121 Cal. App. 4th 1156 (2004)......................................................9, 16

*Betz v. Pankow*,
    31 Cal. App. 4th 1503......................................................................7

*Bolter v. Superior Court*,
    87 Cal.App.4th 900 (2001) ..............................................................14

*Bolter v. Superior Court*,
    87 Cal.App.4th at 908–909..........................................................15, 16

*Bruni v. Didion*,
    160 Cal.App.4th 1272 (2008)...........................................................14

*Erving v. Virginia Squires Basketball Club*,
    349 F.Supp. 716 (E.D.N.Y. 1972) *aff'd* 468 F.2d 1064 (2d Cir.
    1972)............................................................................................20

*Floss v. Ryan's Family Steak Houses, Inc.*,
    211 F.3d 306 (6th Cir. 2000) ...........................................................12

*Geiger v. Ryan's Family Steak Houses, Inc.*,
    134 F. Supp. 2d 985 (S.D. Ind. 2001) ..............................................12

*Graham v. Scissor-Tail, Inc.*,
    28 Cal. 3d at 820.......................................................................12, 19

*Khan v. Dell Inc.*,
    669 F.3d 350 (3d Cir. 2012) ............................................................18

MOTION TO APPOINT NEUTRAL ARBITRATION FORUM

*Kilgore v. KeyBank, Nat. Ass'n*,
  718 F.3d 1052 (9th Cir. 2013)...................................................................13

*Lauter v. Rosenblatt*,
  No. CV1508481-DDPKS, 2020 WL 3545733 (C.D. Cal. June 30,
  2020)...........................................................................................................15

*Martin v. NTT Data, Inc.*,
  No. 20-CV-0686, 2020 WL 3429423 (E.D. Pa. June 23, 2020)........................5

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46,*
  *Int'l Typographical Union*,
  686 F.2d 731 (9th Cir. 1982), *amended sub nom. McClatchy*
  *Newspaper v. Local 46* (9th Cir. Sept. 22, 1982)..................................................6

*Monster Energy Co. v. City Beverages, LLC*,
  __ S. Ct. __, 2020 WL 3492685...........................................................................1

*Monster Energy Co. v. City Beverages, LLC*,
  940 F.3d 1130 (9th Cir. 2019)....................................................................*passim*

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006)............................................................13, 15, 16

*Nishimura v. Gentry Homes, Ltd.*,
  134 Hawai'i 143, 338 P.3d 524 (2014)..............................................................18

*OTO, L.L.C. v. Kho*,
  8 Cal.5th 111 (2019)...........................................................................................13

*Ovitz v. Schulman*,
  133 Cal. App. 4th 830 (2005)...............................................................................9

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
  814 F.2d 1324 (9th Cir. 1987)..............................................................................18

*Pacific etc. Conference of United Methodist Church v. Superior Court*,
  82 Cal.App.3d 72 (1978)......................................................................................17

*Selby v. Deutsche Bank Trust Co. Ams.*,
  No. 12cv01562, 2013 WL 1315841 (C.D. Cal. Apr. 9, 2019)..........................18

*State ex rel. Vincent v. Schneider*,
    194 S.W.3d 853 (Mo. 2006) ................................................................... 12

*Walker v. Ryan's Family Steak Houses, Inc.*,
    400 F.3d 370 (6th Cir. 2005) ............................................................... 12

**Statutes**

9 U.S.C. § 2 ............................................................................................... 1

9 U.S.C. § 4 ............................................................................................... 1

9 U.S.C. § 5 ............................................................................... 1, 17, 18

Cal. Bus. & Prof. Code § 20040 ........................................................... 8

Cal. Civ. Proc. Code § 170.1(a)(3)(A) ............................................... 16

Cal. Civ. Proc. Code § 170.1(a)(6)(A)(iii) ........................................... 8

Cal. Civ. Proc. Code §1281.85 (a) ................................................... 8, 16

Cal. Civ. Proc. Code § 1281.85(c) ........................................................ 8

Cal. Civ. Proc. Code § 1281.91 ............................................................. 9

Cal. Civ. Proc. Code § 1286.2(a)(6)(A) ............................................... 9

**Rules**

L.R. 7-3 ..................................................................................................... 2

Rule 11 ..................................................................................................... 11

Rule 15(i) ................................................................................................ 12

Rule 15(d) ............................................................................................... 11

Rules, 7(a) ............................................................................................... 14

- 4 -

**INTRODUCTION**

The Ninth Circuit vacated the $3 million award by a JAMS arbitrator to Monster Energy because he failed to disclose an ownership interest in the for-profit company, creating the reasonable impression of partiality. JAMS and its neutrals responded by supporting their long-time client in its unsuccessful effort to reinstate the award against Olympic Eagle, filing the first amicus briefs in the company's 40-year history, one in the Ninth Circuit and another in the U.S. Supreme Court.[1] By taking the unprecedented step of choosing sides in an arbitration, JAMS violated the requirement of neutrality under federal and state law and its obligation to Olympic Eagle to remain impartial.

JAMS and its neutrals have created, at a minimum, a reasonable a doubt that they can provide an impartial forum to resolve this dispute on remand. In addition to supporting Monster Energy, JAMS and its neutrals said they would be harmed by Olympic Eagle's success in the Ninth Circuit.[2]

Olympic Eagle asks this Court to assist the parties in breaking their impasse on agreeing to a neutral arbitration forum.  Olympic Eagle has the right to a neutral forum, and has told Monster Energy that it will not agree to proceed in the remand arbitration with JAMS. Olympic Eagle has proposed AAA or other similar neutral providers, but Monster Energy has refused to consider any alternative to JAMS.

---

[1] Brief of JAMS, Inc. as Amicus Curiae in Supp. of Pet'r at 1, 2020 WL 3432814, at *3, filed in *Monster Energy Co. v. City Beverages, LLC*, __ S. Ct. __, 2020 WL 3492685 (No. 19-1333)("JAM Sp. Ct. Br.").

[2] Br. of JAMS, Inc. as Amicus Curiae in Supp. of the Pet. for Rehearing En Banc at 1, filed in *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130 (9th Cir. 2019) (Nos. 17-55813, 17-56082) ("JAMS 9th Cir. Br.").

Monster Energy has suggested that using JAMS may still yet lead to the appointment of an impartial neutral. But under the JAMS rules, JAMS management selects the pool of arbitrators, and will unilaterally appoint the arbitrator if the parties cannot agree.  And any objections to that appointed neutral must be submitted to and decided by JAMS management.  Having a partial body—JAMS— select from a pool of partial JAMS arbitrators it designates will not result in the impartial forum required by state and federal law.  It will likely lead to more litigation about JAMS partiality.

This case has passed the five-year mark. On September 29, 2015, this Court ordered the parties to arbitrate under a dispute resolution clause that presumed JAMS and its neutrals would be impartial. After the JAMS arbitrator ruled against Olympic Eagle, the award that included more than $3.5 million in attorneys' fees was confirmed by this Court.  The judgement was then vacated by the Ninth Circuit on October 22, 2019.  930 F.3d 1130 (9th Cir. 2019), with the Supreme Court denying *certiorari* on June 29, 2020.  207 L.Ed.2d 1100 (US 2020).  The Ninth Circuit issued its formal mandate on July 8, 2020.

Olympic Eagle respectfully asks the Court to compel the remand arbitration before a neutral organization such as AAA.  This will meet the reasonable expectations for and the legal requirement of an impartial forum. It will also avoid having this dispute about franchise law protection become a sideshow to ongoing and lengthy disputes about JAMS disclosure practices, and the reasonable doubts JAMS has created about partiality towards its long-time client, Monster Energy.

## FACTUAL BACKGROUND

In 2006, Monster and Olympic Eagle entered into 20-year distribution agreements that provide for "binding arbitration conducted by JAMS/Endispute." [Dkt. 9-7 at ¶ 26.]  In 2015, Monster terminated Olympic Eagle and asked this court to compel arbitration under the distribution agreements.  [Dkt. 1-2 at ¶ 7.]  The Court found the arbitration provision was "minimally procedurally unconscionable in that no negotiations took place between [Olympic Eagle and Monster Energy]," and it ordered the parties into arbitration under the agreement.  [Dkt. 1-6 at 5.]

The JAMS arbitrator found that Olympic Eagle was not entitled to protection from termination under Washington's franchise laws, ignoring the parties' choice of California law and instead applying Connecticut law. The Arbitrator then awarded $3 million in attorneys' fees to Monster Energy.  [Dkt. 1-5.]

After the arbitration award, Olympic Eagle learned that some JAMS neutrals may be owners with an undisclosed financial interest in the for profit company's substantial business relationship with Monster Energy (97 arbitrations in over a period of five years).  Olympic Eagle's request for information about the undisclosed financial interest was denied by JAMS, as it invoked the Arbitrator's privacy rights and wrote:

> The Final Award in this matter has been issued and neither JAMS nor the arbitrator has any further jurisdiction.  JAMS Comprehensive Rule 30 (which applies to this matter) prevents JAMS, the arbitrator and other JAMS employees from serving as a witness in any proceeding involving the parties and relating to the dispute that is the subject of the arbitration.

[Dkt. 26-12.]  JAMS declined to provide the requested information and opposed Olympic Eagle's subpoena in the District Court.  [Dkt. 42.]

Without addressing the subpoena, the Court confirmed the Arbitrator's award.  [Dkt. 46.]  On appeal, the Ninth Circuit reversed and vacated the award, finding JAMS' failure to disclose the "neutral's" ownership interest, coupled with the substantial business JAMS was doing with Monster Energy, created the appearance of partiality.  930 F.3d 1130 (9th Cir. 2019).

JAMS filed a brief in support of Monster Energy's motion for rehearing and rehearing *en banc*—its "first amicus brief . . . in any case."  [JAMS 9th Cir. Br. at 1.]  JAMS asserted that the Ninth Circuit's decision **"directly impacts JAMS's neutrals and JAMS's business."**  [*Id.* at 2 (emphasis added).]  JAMS is owned by about one-third of its neutrals.  [*Id.* at 3.]

Despite previously withholding from Olympic Eagle information about its ownership structure, JAMS asserted that the Ninth Circuit's "opinion is based on expansive assumptions that are not grounded in fact."  [*Id.* at 3.]  It then supported Monster Energy by providing detailed (though incomplete and misleading) facts in its brief about the nature of the arbitrator's financial interest in Monster Energy and the company's ownership structure more generally.  [*Id.* at 7.]

The Ninth Circuit denied the rehearing request, with no judge requesting a vote on *en banc* review.  [9th Cir. Case No. 17-56082, Dkt. 111.]

In its petition for *certiorari* to the U.S. Supreme Court, Monster Energy highlighted JAMS' efforts on its behalf, writing:  **"In support of Monster's rehearing petition,** JAMS identified the majority's basic misunderstanding of

- 4 -

private arbitration and decried the disruption its decision is already causing."

[Monster Cert petition at 5, 2020 WL 2949949, at *3 (emphasis added).]

JAMS filed an amicus brief in the U.S. Supreme Court again supporting

Monster Energy.  It said:

> This case is the first time that JAMS has ever filed an amicus brief in its forty-plus year history. **JAMS is a neutral ADR provider that has always refrained from supporting or opposing challenges to the arbitral process or arbitration awards.** Yet the Ninth Circuit's decision is so harmful to efficient commercial arbitration and so incorrect in its factual assumptions, that JAMS concluded it had no choice but to take this extraordinary step, first at the rehearing level before the Ninth Circuit and now before this Court.

[JAMS Sp. Ct. Br. at 3 (emphasis added).]

The U.S. Supreme Court denied Monster Energy's petition without asking

for a response from Olympic Eagle.  207 L.Ed.2d 1100 (US 2020).  In response to

the Ninth Circuit's ruling, JAMS has changed its disclosure practices.  *See e.g.,*

*Martin v. NTT Data, Inc.*, No. 20-CV-0686, 2020 WL 3429423, at *3 (E.D. Pa.

June 23, 2020).

Olympic Eagle has proposed that the parties select a new arbitration service

provider, such as AAA, for the remand arbitration. JAMS has created reasonable

doubt about its partiality by supporting Monster Energy's efforts to reverse the

Ninth Circuit's ruling. Monster refuses to consider any provider except JAMS.

[Vaska Decl. at ¶ 12.]

## ARGUMENT

JAMS admits that to "fulfill the policy goals of neutral arbitration"—

including efficiency and finality—"numerous statutes, rules and canons of ethics

- 5 -

have been promulgated . . . ."  [JAMS 9ᵗʰ Cir. Br. at 14.]  Yet JAMS transgressed these neutrality requirements by supporting Monster Energy in this litigation— filing amicus briefs, selectively providing information to benefit one side, and alleging serious harm to JAMS and its neutrals if Olympic Eagle's Ninth Circuit success was not reversed.

Remand of any arbitration carries inherent risk to the integrity and fairness of the process, so much so that the common law doctrine of *functus officio* has been adopted by the Ninth Circuit to guard against a "judicial officer and who acts informally and sporadically" being subject to "the potential evil of outside communication and unilateral influence … ."[3]

These concerns about integrity and fairness on remand generally are heightened when, as here, the remand comes as part of a proceeding where the arbitration body and its neutrals took sides in the dispute and indicated the position taken by one of the parties—Olympic Eagle—will be detrimental to their company and themselves.  The remand arbitrator will decide issues that will reflect on decisions made by the JAMS arbitrator, including whether Olympic Eagle is entitled to attorney's fees for its success in the Ninth Circuit for obtaining a result that JAMS opposed and said would harm its neutrals.  No JAMS neutral can avoid reasonable doubt about his or her partiality in making these decisions.

---

[3] *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 (9th Cir. 1982), *amended sub nom. McClatchy Newspaper v. Local 46* (9th Cir. Sept. 22, 1982) (quoting *La Vale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967)).

Olympic Eagle asks the Court to appoint a new arbitrator, and/or to strike the requirement in the parties' contract to submit disputes to JAMS.  The Federal Arbitration Act allows a court to replace an arbitrator when "unforeseen intervening events have frustrated the intent of the parties, or [] the unmistakable partiality of the arbitrator will render the arbitration a mere prelude to subsequent litigation." *Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 895 (2d Cir. 1977).

Olympic Eagle desires to resolve its dispute with Monster Energy with finality.  Submitting this dispute to JAMS and its neutrals—for whom there is now at a minimum reasonable doubt about their impartiality—will not advance that goal.

## A.    JAMS Created Reasonable Doubt About Its Neutrality By Supporting Monster Energy In This Dispute.

Neutral arbitration requires not only an unbiased forum, but also the appearance of impartiality.  "An impression of possible bias in the arbitration context means that one could reasonably form a belief that an arbitrator was biased for or against a party for a particular reason."  *Betz v. Pankow*, 31 Cal. App. 4th 1503, 1511(1995).  "'[T]he facts and circumstances bearing on the [arbitrator's] possible partiality must be considered as of the time the motion is brought.'" *Id.* at 1512 (quoting *United Farm Workers of America v. Superior Court*, 170 Cal.App.3d 97, 105 (1985)).

JAMS and its arbitrators created reasonable doubt about their neutrality by supporting Monster Energy in the Ninth Circuit and U.S. Supreme Court.  Allowing JAMS to administer the remand arbitration, and to select one of its arbitrators, would violate Olympic Eagle's right to a neutral dispute resolution proceeding.

### 1.    Neutral arbitration requires not only an unbiased forum, but also the appearance of impartiality.

Both federal and California law have long recognized the importance of neutrality and the appearance of impartiality in arbitration.  In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, the Supreme Court explained:

> [A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another.

393 U.S. 145, 150 (1968).

The California Supreme Court likewise said the requirement of a neutral arbitrator is "essential to ensuring the integrity of arbitration."  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 103 (2000).[4]  This requirement is enshrined in California's ethical standards that require neutral arbitrators to "act in a manner that upholds the integrity and fairness of the arbitration process.  He or she **must maintain impartiality toward all participants in the arbitration at all times."** Cal. R. of Court, Ethics Standards for Neutral Arbitrators in Contractual Arbitration ("Ethics Standards"), Standard 5 (emphasis added).  These "ethics requirements and standards" are "nonnegotiable and shall not be waived," Cal. Civ. Proc. Code § 1281.85(c); *see id.* § 1281.85(a) (the Judicial Council shall adopt ethics standards for neutral arbitrators). They apply to arbitrations in California. Ethics Standards, Standard 3(a).

---

[4] California also requires that in any franchise arbitration, "the arbitrator … [must be] chosen from a list of impartial arbitrators supplied by the American Arbitration Association or other impartial person."  Cal. Bus. & Prof. Code § 20040.

Arbitrators are also bound by the California rules for judicial impartiality, *id.*, Standard 10(5), and "shall be disqualified" if "[a] person aware of the facts might reasonably entertain doubt that the judge would be able to be impartial," Cal. Civ. Proc. Code § 170.1(a)(6)(A)(iii).

### 2. By Supporting Monster Energy In This Dispute, JAMS Violated Its Obligation To Be And To Appear Neutral.

JAMS and its neutrals violated the ongoing impartiality requirement and disqualified themselves from serving as a neutral forum when they decided to support Monster Energy. Even if JAMS were to argue that it can be neutral in this matter, which it has not done, Olympic Eagle has the right to disqualify JAMS and its neutrals because they have created, at a minimum, reasonable doubt about their impartiality.

Under California law, "[a]n arbitrator **is disqualified** if" after making the required written disclosures, "a party serves a notice of disqualification" within the time required by California Code of Civil Procedure 1281.91. Ethics Standards, Standard 10(a)(2) and (c) (emphasis added). Under this provision,

> both parties have **the unqualified right to remove a proposed arbitrator** based on any disclosure required by law which could affect his or her neutrality. … There is no good faith or good cause requirement for the exercise of this right, nor is there a limit on the number of proposed neutrals who may be disqualified in this manner. (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2003) ¶ 7:238, p. 7–49 (Knight).) As long as the objection is based on a required disclosure, **a party's right to remove the proposed neutral by giving timely notice is absolute.**

*Azteca Constr., Inc. v. ADR Consulting, Inc.,* 121 Cal. App. 4th 1156, 1163 (2004), as modified (Sept. 9, 2004) (emphasis added). If the arbitrator fails to make a

- 9 -

1  required disclosure, an award may be vacated.  Cal. Civ. Proc. Code §

2  1286.2(a)(6)(A).  *See also Ovitz v. Schulman*, 133 Cal. App. 4th 830, 854 (2005).

3  California law requires disclosure of "all matters that could cause a person

4  aware of the facts to reasonably entertain doubt that the arbitrator would be able to

5  be impartial, including" any arbitrator "interest that could be substantially affected

6  by the outcome of the arbitration," or "[a]ny other matter that [] [m]ight cause a

7  person aware of the facts to reasonably entertain a doubt that the arbitrator would

8  be able to be impartial."  Ethics Standards, Standard 7(d).

9  Under JAMS' own ethics code, its arbitrators may not proceed with a case

10  "unless all Parties have acknowledged and waived any actual or potential conflict

11  of interest."[5]

12  JAMS has chosen to break its obligation to remain neutral. First, after

13  invoking its rules against providing evidence in disputes to deny Olympic

14  Eagle's request about JAMS ownership interests, *see* Dkt. 36-11, Ex. 8,

15  JAMS provided that information to support Monster Energy in *two* amicus

16  briefs on appeal.  [*See* JAMS 9th Cir. Br. at 7; JAMS Sp. Ct. Br. at 11 & n.6.]

17  Second, JAMS acknowledged in its amicus briefs that it crossed the

18  neutrality line.  In the Supreme Court, JAMS filed a brief "in support of

19  Petitioner" –Monster Energy—and said "[t]his case is the first time that

20  JAMS has ever filed an amicus brief in its forty-plus year history," and that

21  as "a neutral ADR provider [it] has always refrained from supporting or

22  opposing challenges to the arbitral process or arbitration awards."[6]  JAMS

23

24

25

---

26  [5] The JAMS Arbitrators Ethics Guidelines are available at
https://www.jamsadr.com/arbitrators-ethics/.

27  [6] JAMS Sp. Ct. Br. at 3.

28

made similar statements emphasizing that its involvement as amicus was unprecedented in its briefing to the Ninth Circuit.[7]

Third, as justification for violating its neutrality obligations, JAMS asserted that the Ninth Circuit's decision in favor of Olympic Eagle would harm both JAMS' business *and* its neutrals.  JAMS described the decision as "deleterious to efficient commercial arbitration" and stated that it "directly impacts JAMS's neutrals and JAMS's business."[8]

Finally, JAMS' involvement in this case went beyond simply disagreeing with the Ninth Circuit's disclosure requirements.  It supported reinstating the $3.5 million award against Olympic Eagle *in this case*.[9]  By stating a position that Olympic Eagle's victory in the Ninth Circuit should be reversed, JAMS and its arbitrators picked Monster Energy's side.

### 3.    An Arbitration Provider That Is Partial To One Party Cannot Unilaterally Select The Neutral Arbitrator.

Monster Energy refuses to agree to a neutral arbitration provider, arguing that JAMS should be allowed to administer the remand arbitration, including the process for selecting a neutral from a pool of JAMS arbitrators.  [Vaska Decl. at ¶ 12.]  But JAMS rules give it the power to propose a list of neutrals,[10] to appoint one

---

[7] *See* Mot. for Leave to File Br. of JAMS, Inc. as Amicus Curiae in Supp. of the Pet. for Rehearing En Banc at 1–2, filed in *Monster Energy Co.*, 940 F.3d 1130; JAMS 9th Cir. Br. at 1–2.

[8] JAMS 9th Cir. Br. at 1–2.

[9] JAMS argued to the Supreme Court, "the Ninth Circuit did not apply its newly announced disclosure requirements only *prospectively*.  It applied its new disclosure requirements *retroactively* to vacate a final award because of the arbitrator's failure to comply with these previously not-required disclosures."  JAMS Sp. Ct. Br. at 3 (emphasis in original).

[10] JAMS says its "strike lists" of proposed arbitrators are assembled by its management "based on a variety of factors."  [JAMS 9th Cir. Br. at 12.]

unilaterally if the parties do not agree, and to decide any objections from a party to its selection.  Allowing a partial arbitration forum to select an arbitrator does not cure the appearance of partiality.[11]

In *Graham v. Scissor-Tail, Inc.*, the California Supreme Court concluded a provision that "designates an arbitrator who, by reasons of its status and identity, is presumptively biased in favor of one party" is unconscionable and thus unenforceable. 28 Cal. 3d 807, 821 (1981).  The Missouri Supreme Court also succinctly observed that an arbitration provision is unconscionable when it requires "that an individual in a position of bias be the sole selector of an arbitrator, who must be unbiased." *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. 2006) (holding arbitrator-selection portion of agreement unconscionable).

Under the Federal Arbitration Act, apparent bias toward a party by the organization that determines the pool of potential arbitrators "would render the arbitral forum fundamentally unfair."  *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000); *see also Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 386 (6th Cir. 2005) (same).  Where the arbitration service provider has "full authority to select both the Rules for arbitration as well as the pools of potential arbitrators" and there is "the potential for bias on the part of [the

---

[11] JAMS controls arbitrator selection, including the power to appoint the sole arbitrator if the parties do not agree and to resolve any disputes concerning that appointment. *See* JAMS Comprehensive Arbitration Rules & Procedures (Available at: https://www.jamsadr.com/rules-comprehensive-arbitration), Rule 11 ("[d]isputes concerning the appointment of the Arbitrator shall be resolved by JAMS"), Rule 15(d) ("JAMS shall designate the sole Arbitrator" if the parties do not agree on one), Rule 15(i) ("JAMS shall make the final determination" as to any challenge to an arbitrator's continued service).

provider]" in favor of one side, it is "unlikely" the other side "will participate in an unbiased forum."  *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp. 2d 985, 995 (S.D. Ind. 2001).

JAMS has raised serious doubt about its neutrality in this case, having taken Monster Energy's side.  Allowing JAMS to select one of its neutrals will not cure the reasonable doubts about partiality in this case.[12]

### B. JAMS' Support For Monster Energy Violates Olympic Eagle's Reasonable Expectation Of, And The Non-Waivable Public Policy Requiring, A Neutral Forum.

"In analyzing whether an arbitration agreement is valid and enforceable, 'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1268 (9th Cir. 2006) (internal citations omitted).  California law applies to determine whether there are any "generally applicable contract defenses. . . ." *Id.; see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) ("state law that 'arose to govern issues concerning the validity, revocability, and enforceability of contracts generally' remains applicable to arbitration agreements" under FAA).

### 1. JAMS Violated Olympic Eagle's Reasonable Expectations That It Would Remain Neutral.

Under California law, a contract or provision which is adhesive will not be enforced if it "violates the reasonable expectations of the weaker or 'adhering' party or is 'unduly oppressive or 'unconscionable.'" *OTO, L.L.C. v. Kho,* 8 Cal.5th

---

[12] Even those JAMS neutrals who are not owners have an "economic interest in the overall success" of the for-profit company. [Dkt. 26-10 at Page ID #966.]  They are expected to be full time neutrals working exclusively for JAMS. [*Id.* at #964.]

111, 143 (2019) (citing *Graham v. Scissor-Tail, Inc.,* 28 Cal. 3d at 820). *See also Nagrampa*, 469 F.3d at 1291 (refusing to enforce arbitration agreement where "the forum selection provision did not fall within [the adhering party's] reasonable expectations."). *See also Bruni v. Didion*, 160 Cal.App.4th 1272, 1294–1295 (2008) (holding that a clause requiring the arbitrator to resolve "disputes over arbitrability" was unenforceable because it "was well beyond a layperson's reasonable expectations. . . ."). This court has previously concluded that the arbitration provision is adhesive as Monster Energy presented it to Olympic Eagle on a take-it-or-leave it basis. [Dkt. 1-6 at 5.] While the Court found some degree of procedural unconscionability, it did not find substantive unconscionability. But it did not address the issue of whether there is reasonable doubt as to JAMS impartiality.

In assessing unconscionability, the court may consider "its [commercial] setting, purpose, and effect." *Bolter v. Superior Court*, 87 Cal.App.4th 900, 907 (2001). Olympic Eagle is the "adhering party," and it had the reasonable expectation that the arbitration service provider specified in the agreement would maintain its neutrality.

In 2006, Monster and Olympic Eagle entered into the Agreement providing for "binding arbitration conducted by JAMS/Endispute. ('JAMS') in accordance with JAMS Comprehensive Arbitration Rules and Procedures (the 'Rules'). . . ." [Dkt. 9-7 at ¶ 26.] Those Rules provide that "[t]he Arbitration shall be conducted by one *neutral* Arbitrator." JAMS Rules, 7(a) (emphasis added). JAMS has consistently represented that it operates as a neutral. For example, JAMS wrote as a "neutral ADR provider" it has "refrained from supporting or opposing challenges made by parties to the arbitral process . . . ." (JAMS Sp. Ct. Br. at 1.)

The Agreement and JAMS rules, statements and conduct created a reasonable expectation that JAMS would uphold its commitment to neutral arbitration, and that

- 14 -

it would not seek to support Monster Energy through amicus or other filings in this litigation.  But on December 16, 2019, JAMS filed a brief supporting Monster's petition for rehearing in this case, which argued that Monster's $3 million arbitration award against Olympic in this matter should be upheld. [JAMS 9th Cir. Br.]  In its brief supporting Monster's request for review by the Supreme Court, JAMS told the Supreme Court it "has an interest in this case. . . ." [JAMS Statement of Interest as Amicus Curiae in Supp. of Pet'r, 2020 WL 3432814, at *2.] Considering that JAMS has never filed an amicus brief in its 40-year history, the unique action of filing JAMS' "first amicus brief . . . in any case" and stating an "interest" in its outcome is not a circumstance that the parties anticipated when they entered into the Agreement in 2006.  [*Id.* at 1.]

Subsequent events can upset the reasonable expectations of the party at the time the contract was made.[13]  In *Bolter v. Superior Court*, for example, the California Court of Appeals refused to enforce an arbitration agreement, finding a franchisee "never anticipated [the franchisor] would relocate its headquarters to Utah and mandate that all disputes be litigated there." *Bolter v. Superior Court*, 87 Cal.App.4th at 908–909.  Similarly, in *Nagrampa*, the Ninth Circuit found a forum selection provision substantively unconscionable because the "provision did not fall within the [franchisee's] reasonable expectations." *Nagrampa*, 469 F.3d at 1291.

JAMS' decision to file two briefs supporting Monster Energy's award in this case violated its own professed commitment to neutrality and Olympic Eagle's

---

[13] California's frustration of purpose doctrine also invalidates a contractual obligation when an "unanticipated supervening circumstance" occurs destroying the value of performance. *See Lauter v. Rosenblatt*, No. CV1508481-DDPKS, 2020 WL 3545733, at *4 (C.D. Cal. June 30, 2020).

reasonable expectations.  It would be unconscionable to require Olympic Eagle to arbitrate in that forum.

### 2.    Allowing JAMS Or Its Neutrals To Preside Over This Dispute Violates The Unwaivable Right to An Impartial And Neutral Arbitrator.

"California courts refuse to enforce arbitration provisions on public policy grounds if they impede the enforcement of unwaivable statutory rights." *Nagrampa*, 469 F.3d 1292.  California's ethical standards for neutral arbitrators are binding, Cal. Civ. Proc. Code §1281.85 (a), and "are nonnegotiable and shall not be waived."  *Id.* at 1281.85 (c).  "[T]he neutrality of the arbitrator is of such crucial importance that the Legislature cannot have intended that its regulation be delegable to the unfettered discretion of a private business." *Azteca Constr., Inc. v. ADR Consulting, Inc.,* 121 Cal. App. 4th at 1168 (finding that AAA was required to follow California law on arbitrator disqualification not its own rules).

A proposed arbitrator may be disqualified by a party if he or she does not maintain impartiality toward all participants or gives rise to reasonable doubts about partiality toward one party.  Ethics Standards, Standard 5 and 6(d); *see also* Cal. Civ. Proc. Code § 170.1(a)(3)(A) (judge disqualified if a "person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"); Ethics Standard, Standard 10(5) ("arbitrator is disqualified" if any grounds under Section 170.1 "exists and the party makes a demand that the arbitrator disqualify himself.").

Olympic Eagle is reasonable in entertaining a doubt that JAMS or any of its neutrals can be impartial in a remand arbitration.  [*See* Bai Decl. at ¶¶ 4-9.]  JAMS

acknowledges its owners and non-owners all share an economic interest in the ongoing financial success of the for-profit company. [Dkt. 26-10 at Page ID #966.] And they filed a brief against Olympic Eagle's position, seeking to reinstate a $3.5 million award in Monster Energy's favor.  Where a judge "offers an opinion on a matter not yet pending before him and thereby shows a bias or prejudice against a party" he or she should be "preclud[ed] from hearing that matter."  *Pacific etc. Conference of United Methodist Church v. Superior Court,* 82 Cal.App.3d 72, 84 (1978).

> ### C.    The Court Should Compel Arbitration in a Neutral Forum.

JAMS has created reasonable doubts about its ability to provide a neutral forum in this case. If parties cannot agree on a substitute provider (as they have so far been unable to do), the Court should appoint one under Section 5 of the Federal Arbitration Act.  It provides in relevant part that, "if for any … reason there shall be a lapse in the naming of an arbitrator … or in filling a vacancy …upon the application of either party to the controversy the court shall designate and appoint an arbitrator."  9 U.S.C. § 5.  Courts have invoked this and similar state-law provisions to appoint a neutral forum when (a) the appointed arbitrator had lapsed, including when the parties reached an impasse at appointing one, or (b) courts have struck a provision that allowed an entity with a relationship to one of the parties to select the neutral.

> ### 1.    JAMS Is Unavailable Because Its Support For Monster Energy Has Raised Reasonable Doubts About Its Impartiality.

JAMS became unavailable to arbitrate this case when it created reasonable doubts about whether it is neutral.  Olympic Eagle has unwaivable rights to object

to any JAMS neutral.  The parties are at an impasse because Monster Energy

refuses to agree to neutral forum or neutral pool of arbitrators.

When there has been a lapse in appointment of an arbitrator, the Court may

invoke Section 5 of the Federal Arbitration Act, which reflects that,

> the intent of Congress was to spur the arbitral process forward, rather
> than to let it stagnate into endless bickering over the selection
> process. . . . By enacting § 5, therefore, Congress decided that impasse
> in the arbitral process was to be avoided where possible, and that the
> agreements of the parties would have to take a subordinate position
> where impasse in umpire selection arises.

*Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 814 F.2d 1324, 1329

(9th Cir. 1987).

Unavailability of the designated service provider is a "'lapse' within the

meaning of Section 5." For example, in *Khan v. Dell Inc.*, 669 F.3d 350, 357 (3d

Cir. 2012), the Third Circuit found the National Arbitration Forum's ("NAF")

availability  "lapsed" when the disclosure of indirect financial ties to interested

parties resulted in its agreement to stop serving as the arbitral forum, even though it

was named in thousands of form contracts. Under these circumstances, "Section 5

of the FAA requires a court to address such unavailability by appointing a substitute

arbitrator." *Id.* at 357; *see also, e.g.*, *Selby v. Deutsche Bank Trust Co. Ams.*, No.

12cv01562, 2013 WL 1315841 (C.D. Cal. Apr. 9, 2019) ("the Court will designate

a new forum for arbitration in accordance with Section 5 of the FAA" where NAF

was unavailable, not integral to the arbitration agreement, and there was a severance

clause in the agreement); *Nishimura v. Gentry Homes, Ltd.*, 134 Hawai'i 143, 338

P.3d 524 (2014) (affirming trial court's power to require parties to agree on

arbitration service provider under FAA or appoint new provider when designated arbitration service provider ceased to exist).

### 2. The court should strike the clause designating JAMS and appoint a neutral arbitrator.

In *Beltran v. AuPairCare, Inc.*, the Tenth Circuit Court of Appeals concluded that the arbitration agreement allowing one party unilaterally to select an arbitration provider was substantively unconscionable because it lacked mutuality and allowed the party to "select indirectly a biased arbitrator." 907 F.3d 1240, 1257–58, 1262 (10th Cir. 2018). Applying California law, the court struck the clause, leaving the rest of the arbitration agreement intact, explaining that doing so was permissible because "both California and federal law provide a default method for appointing an arbitrator." *Beltran*, 907 F.3d at 1263 (citing 9 U.S.C. § 5; Cal. Civ. Proc. Code § 1281.6).

Similarly, in *Graham v. Scissor-Tail, Inc.*, the California Supreme Court struck a requirement to arbitrate with a forum "presumptively biased in favor of one party." 28 Cal. 3d at 831. It did not, however, invalidate the entire arbitration agreement. Instead, it concluded that "upon remand the trial court should afford the parties a reasonable opportunity to agree on a suitable arbitrator and, failing such an agreement, the court should on petition of either party appoint the arbitrator." *Id.* (citing Cal. Civ. Proc. Code § 1281.6).

Pre-award removal of an arbitrator is justified "when the court concludes … that unforeseen intervening events have frustrated the intent of the parties, or that the unmistakable partiality of the arbitrator will render the arbitration a mere prelude to subsequent litigation." *Aviall, Inc.,* 110 F.3d at 895. Under the FAA, a

court should compel arbitration "before a neutral arbitrator" when the person designated by the contracts turns out to be partial.  *Erving v. Virginia Squires Basketball Club*, 349 F.Supp. 716, 719 (E.D.N.Y. 1972) *aff'd* 468 F.2d 1064 (2d Cir. 1972) (designated arbitrator, the basketball league commissioner, was partner in law firm representing a party).

### CONCLUSION

In the unique circumstances of this case, the only case where JAMS has filed adversarial briefs taking sides against one party following a JAMS arbitration, Olympic Eagle respectfully asks the Court compel arbitration in a different, neutral forum.

Dated: December 21, 2020

BRYAN CAVE, LLP

By: */s/ David Harford*_____
    Jonathan Solish
    David Harford

FOSTER GARVEY PC

By: */s/ Mike Vaska*_____
    Michael K. Vaska

***Attorneys for Respondent City Beverages LLC dba Olympic Eagle Distributing***

- 20 -

MOTION TO APPOINT NEUTRAL ARBITRATION FORUM