UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:17-cv-00295-RGK-KK | Date | February 17, 2021 |
|---|---|---|---|
| Title | *Monster Energy Company v. City Beverages d/b/a Olympic Eagle Distributing* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Respondent's Motion to Compel Arbitration in a Neutral Forum [84]

## I.   INTRODUCTION

Monster Energy Company ("Monster") filed a complaint in a separate action before this Court[1] against City Beverages, LLC d/b/a Olympic Eagle Distributing ("Olympic") about a contractual dispute. Monster sought declaratory relief that the arbitration provision in their contract was valid and enforceable. The Court agreed with Monster and granted Monster's Motion to Compel Arbitration. Monster prevailed in arbitration, and the arbitrator awarded Monster roughly $3,000,000 in attorney's fees and costs ("Arbitration Award").

The Court later confirmed this award and entered judgment against Olympic. Olympic appealed to the Ninth Circuit, who vacated the Arbitration award.

Now before the Court is Olympic's Motion to Compel Arbitration in a Neutral Forum. For the following reasons, the Court **DENIES** Olympic's Motion.

## II.   FACTUAL BACKGROUND

Olympic is a beverage distribution company in the state of Washington and is the exclusive distributor of Anheuser-Busch ("AB") beer within its territory. Monster is an energy drink company that reached an agreement with AB in 2006 for the distribution of Monster's products. Under the Monster-AB agreement, all of AB's existing distributors could elect to also distribute Monster products.

Olympic became a Monster distributor and began distributing Monster's beverages in Washington under two separate Monster-Olympic distribution agreements.

Under these agreements, Monster and Olympic's distribution relationship would last for 20 years, but Monster had the right to terminate the agreements without cause if Monster: (1) repurchased

---

[1] *Monster Energy Co., v. Olympic Eagle Distrib.*, No. 15-cv-00819-RGK-KK

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:17-cv-00295-RGK-KK | Date | February 17, 2021 |
|---|---|---|---|
| Title | *Monster Energy Company v. City Beverages d/b/a Olympic Eagle Distributing* | | |

Olympic's unsold Monster inventory, advertising material, and equipment; and (2) paid Olympic an amount equal to Olympic's twelve-month trailing gross profit earned from its sale of Monster products.

In 2014, Monster decided to seek a broader master distribution agreement with Coca-Cola that would require Monster to terminate its existing distribution agreements. So Monster terminated its agreement with Olympic, repurchased the excess inventory, advertising material, and equipment.

Olympic then challenged the termination based on Washington franchise law, which Olympic argued prohibits Monster from terminating their agreement without cause.

Monster sought declaratory relief before this Court. It asked the Court to enforce the arbitration provisions in the Monster-Olympic distribution agreements. The Court found that Monster's right to terminate the agreement fell within the terms of their arbitration agreement, and ordered the parties to arbitration.[2] Under the Monster-Olympic arbitration agreement, JAMS, a large alternative dispute resolution services firm, would conduct the arbitration.

The JAMS arbitrator found that Olympic was not a "franchisee," and Monster was not a "franchisor," for purposes of the Washington Franchise Investment Protection Act ("FIPA"), Wash. Rev. Code § 19.100 *et seq.* (Arbitrator's Award at 7, ECF No. 9-5). Because the arbitrator determined that FIPA did not apply, the early termination provisions in the Monster-Olympic distribution agreements were valid and enforceable. (*Id*).

The arbitrator also found that the arbitration provisions in the distribution agreements allowed the arbitrator to award reasonable attorneys' fees and costs to the prevailing party. (*Id.* at 11). After reviewing the declarations and briefs submitted by the parties on the issue, the arbitrator awarded Monster $3,000,000 in attorney's fees and costs. Monster petitioned to confirm the Arbitration Award in this Court, and Olympic sought to vacate it.

The Court ultimately confirmed the Arbitration Award and the award of attorneys' fees. (Order at 6, ECF No. 46).

Olympic appealed the Court's confirmation and the award of attorneys' fees to the Ninth Circuit. The Ninth Circuit vacated the Court's decision because the arbitrator had failed to disclose his ownership interest in JAMS despite its "nontrivial business relations with Monster" which could "create a reasonable impression of bias." *Monster Energy v. City Beverages*, 940 F.3d 1130, 1138 (9th Cir. 2019).

Following the Ninth Circuit's decision, JAMS filed two amicus briefs. The first seeking a rehearing en banc of the Ninth Circuit's decision, and the second on a petition for certiorari before the U.S. Supreme Court. The Ninth Circuit declined en banc review, and the Supreme Court denied the cert petition. Now the Ninth Circuit has remanded the case to this Court.

---

[2] *Monster Energy Co.*, No. 15-cv-00819-RGK-KK. Order Granting Motion to Compel Arbitration, ECF No. 45.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:17-cv-00295-RGK-KK | Date | February 17, 2021 |
|---|---|---|---|
| Title | *Monster Energy Company v. City Beverages d/b/a Olympic Eagle Distributing* | | |

### III. JUDICIAL STANDARD

A contract is covered by the Federal Arbitration Act ("FAA") if it "evidenc[es] a transaction involving commerce." 9 U.S.C. § 2. Under the FAA, courts are required "to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement." *AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (quoting U.S.C. § 3). The role of the court is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

"The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 131 S. Ct. at 1746 (quoting 9 U.S.C. § 2). Thus, arbitration provisions may be invalidated by "'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* Courts also have the authority to appoint arbitrators "if for any other reason there shall be a lapse in the naming of an arbitrator . . . , or in filling a vacancy." 9 U.S.C. § 5.

Once an arbitration agreement is found to be valid, enforceable, and applicable, the court shall stay the action pending the outcome of the arbitration or dismiss the action. 9 U.S.C. § 3; *Sparling v. Hoffman Constr. Co. Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

### IV. DISCUSSION

After the Ninth Circuit's remand, Olympic and Monster negotiated how the parties should proceed with arbitration. Olympic requested that the parties arbitrate before someone other than JAMS. Monster declined.

Now Olympic asks the Court to compel arbitration before another organization. And it argues that the Court can do so under the FAA and because the arbitration agreement is unconscionable.

Olympic's argument turns on the assertion that JAMS has "created reasonable doubt about its partiality by supporting [Monster's] efforts to reverse the Ninth Circuit's ruling." (Mot. Compel Arb. At 5, ECF No. 84). But because the Court disagrees that JAMS's amicus briefs negate its ability to neutrally arbitrate Monster's and Olympic's case, it does not consider whether the arbitration agreement is unconscionable or whether it has authority under the FAA to appoint a new arbitrator.

#### A. JAMS's Partiality

Olympic's and Monster's agreement designates JAMS as the arbitrator for their dispute. But Olympic contends that by filing amicus briefs supporting Monster before the Ninth Circuit and the Supreme Court, JAMS can no longer remain an impartial body. The Court disagrees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 5:17-cv-00295-RGK-KK | Date | February 17, 2021 |
|---|---|---|---|
| Title | *Monster Energy Company v. City Beverages d/b/a Olympic Eagle Distributing* | | |

Start with the briefs themselves. JAMS filed both "in support of Petitioner" (Monster). (Br. of JAMS, Inc. as Amicus Curiae in Support of Pet. at *1, 2020 WL 3316791 ("Ninth Circuit Brief")); Br. of JAMS, Inc. as Amicus Curiae in Support of Pet. at *1, 2020 WL 2949949 ("Supreme Court Brief")). But neither brief takes issue with Olympic's and Monster's underlying dispute. Instead, JAMS opposes the Ninth Circuit's new understanding of "evident partiality" and the retroactive effect of the new disclosure requirements. (*See* Ninth Circuit Brief at *2; Supreme Court Brief at *3, 7). It would be highly speculative to argue that this position would affect an individual JAMS arbitrator's ability to neutrally consider Olympic's and Monster's dispute.

There is thus no reason for the Court to take the drastic step of disqualifying every single JAMS arbitrator—even those who with no ownership interest in the company[3]—before the parties have even attempted to arbitrate before JAMS. There are also sufficient safeguards in place to maintain an impartial forum. Especially since JAMS encourages the parties to select their own arbitrators before JAMS gets involved. (*See* JAMS Rule 15(b), ECF No. 87-6). Olympic is therefore free to try to select an arbitrator with no ownership interest in JAMS if it believes that would cause the arbitrator to be biased against Olympic.

Thus, at this time, the Court sees no reason why JAMS could not fairly arbitrate this dispute.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Olympic's Motion. The Court therefore orders Olympic and Monster, under their arbitration agreement, to arbitrate their dispute before JAMS.

**IT IS SO ORDERED.**

Initials of Preparer   _____

---

[3] The Ninth Circuit noted in its decision that only one-third of the JAMS's neutrals have any ownership interest. *Monster Energy*, 940 F.3d at 1136 n.2.